UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA LOVE<br><br>       Plaintiff,<br><br>    v.<br><br>CLARENCE IVY SIMMONS, JR. aka COODIE, CHIKE ANTOINE OZAH, and NETFLIX, INC.,<br><br>       Defendants. | Case No. 1:23-cv-02392<br><br>Hon. Steven C. Seeger |

## **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Natalie J. Spears
Jacqueline A. Giannini
Victoria J. Noble
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
Tel:   (312) 876-8000
Fax:   (312) 876-7934
natalie.spears@dentons.com
jacqui.giannini@dentons.com
victoria.noble@dentons.com

The acclaimed docuseries *Jeen-yuhs: A Kanye Trilogy* (the "Documentary") charts the rise of hip-hop superstar Kanye "Ye" West, using historical videotape footage compiled over the course of two decades. Plaintiff has sued the filmmakers and producers of the Documentary for defamation, false light, right of publicity and other tag-along torts, based on less than one minute of that footage, which documents her encounter with Mr. West in a public restaurant in Chicago twenty years ago. In the complained-of footage, Plaintiff sings and jokes around with Mr. West about making a video with him, then asks him for some change. That is all. Neither Mr. West nor the Documentary's narrator comments on Plaintiff or her conduct.

Plaintiff's claims fail as a matter of law because use of historically accurate video footage cannot be the basis for defamation, right of publicity, or other tort claims when used, as here, in a documentary. To begin, Plaintiff cannot state a claim for defamation for the fundamental reason that she concedes the footage is true. Her theory that the Documentary depicts her in a "*now-false*" lifestyle because she is a different person many years later is contrary to law. (Compl., Ct. IV, ¶ 28.) Further, no claim for libel *per se* will lie because as a matter of law the footage of Plaintiff in the Documentary does not implicate any of the defamation *per se* categories, notwithstanding her characterizations of the footage, and in any event is subject to dismissal under Illinois' innocent construction rule. The libel *per quod* claims also fail on the absence of required special damages. The false light claims fail for the same reasons as the defamation claims, among others. Finally, Plaintiff's purported right of publicity claims fail as a matter of law because use of Plaintiff's image in a work like the Documentary is clearly and unambiguously exempt from liability under the Illinois Right of Publicity Act, consistent with the First Amendment.

Dismissal is in order. While Plaintiff may regret how she appears in the brief footage from long ago—and may now, decades later, be in a "transformed" place in her life (Compl. ¶¶ 20-22), which is of course commendable—under the law, Plaintiff is not entitled to tort damages that punish

documentarians' use of concededly truthful historical footage. That would have an obvious chilling effect on this important form of speech. Illinois law rightly forecloses that result.

## FACTUAL BACKGROUND

The three-part Documentary series *Jeen-yuhs: A Kanye Trilogy,* which documents the career and rise to stardom of hip-hop artist Kanye West, was filmed over two decades by filmmaker Clarence Simmons, Jr., aka Coodie. (Compl. ¶ 1.)[1] The Documentary aired on Netflix in February 2022. (*Id.* ¶ 11.) Episode 1 focuses on the years 1998 – 2002, culminating in Mr. West signing his first record deal with the Roc-a-Fella record label. (*See* Ex. 1, Ep. 1, generally and at timestamp 1:11:05.) After signing the contract in 2002, the Episode follows Mr. West back to his hometown of Chicago, where he visits his mother and the neighborhood where he grew up and appears at a concert with other Roc-a-Fella recording artists, including Jay-Z. (*See id.*, 1:12:25– 1:23:25.)

At approximately the 1:13:22 mark in Episode 1, Mr. West visits a Chicago barbeque restaurant where he encounters a woman, who Plaintiff has identified as her. (*See* Ex. 1, Ep. 1, 1:13:22.) She jokes around with Mr. West, singing and commenting "That was Jay-Z and the other stuff. You know, that video already made. You know, it's old. We workin' on a new video." When Mr. West asks "What's the new video?" she responds "It's yours, it's Kayne West's video." She then asks him for some change and when he gives her some money, says "God bless you baby. Thank you. For real," and hugs Mr. West. (*See* Ex. 1, Ep. 1, 1:13:22 - 1:14:03.) The filmed conversation between Plaintiff and Mr. West lasts less than a minute (the "Footage"). There is no commentary about Plaintiff by Mr. West or the narrator. (*Id.*)

---

[1] Plaintiff refers to, and her Complaint rests on, her appearance in the Documentary. Consideration of the full context of the Documentary is appropriate because it is "central to [Plaintiff's] claim" and referenced in the Complaint; as such the Court may properly consider it on this Motion. *Venture Assocs. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431-32 (7th Cir. 1993); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (court may consider "video recordings attached to *or referenced in* a complaint" on a motion to dismiss) (emphasis added). A copy of the Documentary is submitted herewith as Exhibit 1.

2

A short clip from the Footage depicting Plaintiff was used in Mr. West's 2003 music video "Through the Wire," and reappears in the background of Episode 2 of the Documentary when that music video is played on a large television screen at a video release party 20 years ago. *See* Ex. 1, Ep. 2, 1:04:43 - 1:04:52.)

The Complaint rests on Plaintiff's characterization of the complained-of Footage in the Documentary. Plaintiff alleges: "As presented in *jeen-yuhs: A Kanye Trilogy*, Ms. Love appears intoxicated, drunk and/or stoned, addicted and/or living in an addiction-fueled lifestyle, inebriated, vagrant and/or possibly homeless, broke, impoverished, disheveled, and desperate." (Compl. ¶ 20.) Plaintiff's Complaint acknowledges that she in fact had substance abuse issues when the Footage was filmed, but that "[s]ince being recorded in 2003, Ms. Love has made a miraculous transformation. She has built a life to be proud of: sober almost eighteen years, holding long-term jobs, rebuilding relationships with friends and family and regaining the respect of her community, neighbors, and friends." (*Id.* ¶ 22.)

## **ARGUMENT**

The Complaint fails as a matter of law based on Plaintiff's own allegations, and the video evidence referenced in the Complaint, for the fundamental reason that she cannot found her various tort claims on the admittedly historically accurate video Footage of her in the Documentary. *Bogie*, 705 F.3d at 609 ("district courts are free to consider ' "any facts set forth in the complaint that undermine the plaintiff's claim." '") (citations omitted). "And while the Court must take all well-pleaded allegations in a complaint as true for the purposes of determining a motion to dismiss, the Court need not 'take the plaintiff's *interpretation* of the allegedly defamatory words at face value.'" *Ludlow v. Northwestern Univ.*, 79 F. Supp. 3d 824, 838 (N.D. Ill. 2015) (quoting *Lott v. Levitt*, 556 F.3d 564, 569 (7th Cir. 2009) (emphasis original)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (conclusory allegations are "not entitled to be assumed true"); *Bell Atlantic Corp.*

3

*v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint states no valid claim and should be dismissed with prejudice.

## I. Plaintiff's Defamation Claims (Counts I - VI) Fail as a Matter of Law.

### A. Defamation Requires a False Statement and the Footage at Issue is Admittedly True.

There is no false and defamatory statement about Plaintiff in the Documentary. Plaintiff does not and could not dispute that her words and actions committed to video in 2002 were accurately recorded, and she does not and could not assert that any other words uttered in the Documentary defame her—there are none.

"[F]alsity is an element of the plaintiff's defamation claim" under Illinois law, *Voyles v. Sandia Mortg. Corp.*, 196 Ill. 2d 288, 299-300 (2001), and is Plaintiff's burden under the First Amendment, *Phila. Newsp., Inc. v. Hepps*, 475 U.S. 767, 776 (1986). Substantial truth also is "a defense, indeed the ultimate defense, to any action for defamation." *Bradley v. Avis Rental Car Sys., Inc.,* 902 F. Supp. 814, 820 (N.D. Ill. 1995). "The rule making substantial truth a complete defense and the constitutional limitations on defamation suits coincide." *Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1228 (7th Cir. 1993); *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991).

The standard of substantial truth or material falsity asks if "the 'gist' or 'sting'" of the statements is true. *Harrison v. Chi. Sun-Times, Inc.*, 341 Ill. App. 3d 555, 563, 569 (2003) (quoting *Lemons v. Chronicle Publishing Co*., 253 Ill. App. 3d 888, 890 (1993)). As the Seventh Circuit has emphasized, when "determining the 'gist' or 'sting'" of allegedly defamatory material, a court must "look at the highlight of the article, the pertinent angle of it, and not to items of secondary importance which are inoffensive details, immaterial to the truth of the defamatory statement." *Vachet v. Central Newsp., Inc*., 816 F.2d 313, 316 (7th Cir. 1987) (citation omitted).

4

The Illinois courts and federal courts applying Illinois law routinely grant motions to dismiss defamation claims on substantial truth grounds. *See e.g. Ludlow*, 79 F. Supp. 3d at 837;[2] *see also Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017) ("several courts of appeals have affirmed dismissals of defamation claims because the material in the complaint cannot be reasonably understood except as being true or substantially true"). "While determining 'substantial truth' is normally a question for the jury, the question is one of law where no reasonable jury could find that substantial truth had not been established." *Moore*, 402 Ill. App. 3d at 71 (citation omitted). And where the plaintiff "concedes the essential truth of the alleged defamatory statement," a motion to dismiss on grounds of truth is appropriate, "even as framed in the plaintiff's own allegations." *Lynch v. Young*, 2005 WL 946881, at *5 (N.D. Ill. Mar. 9, 2005).

Here, both on the face of the Complaint and by reference to the Footage it incorporates, the depiction that Plaintiff complains of is not just substantially true but literally true; it could not be otherwise: it is what it is. *See Coghlan*, 2013 IL App (1st) 120891 at ¶¶ 45-46 (affirming dismissal on truth grounds based on complaint allegation and referenced exhibit that contradicted claim); *Am. Intern. Hosp.*, 136 Ill. App. 3d at 1023 (report that plaintiff had been "'refused accreditation'" by committee substantially true where allegations of falsity were "internally contradicted" by document reflecting committee's decision "'not to accredit'"); *cf. Bogie*, 705 F.3d at 609 (video contradicted privacy claim; affirming dismissal). "A party's accurate quoting of another's statement cannot defame the speaker's reputation since the speaker is himself responsible for whatever harm the words might cause." *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993) (plaintiff "would be unable to

---

[2] *All* of the following cases affirm or grant dismissal at the pleadings stage on substantial truth grounds: *Kapotas v. Better Gov't Ass'n*, 2015 IL App (1st) 140534, ¶ 48; *Coghlan v. Beck*, 2013 IL App (1st) 120891, , ¶¶ 45-46; *Moore v. PETA,* 402 Ill. App. 3d 62, 71, 75 (2010); *Gist v. Macon Cty, Sheriff's Dept.*, 284 Ill. App. 3d 367, 372 (1996); *Lemons v. Chronicle Publ. Co.*, 253 Ill. App. 3d 888890-92 (1993); *Am. Intern. Hosp. v. Chi. Tribune Co.,* 136 Ill. App. 3d 10191022-23 (1985); *Kilbane v. Sabonjian*, 38 Ill. App. 3d 172, 175-76 (1976); *Mouloki v. Epee*, No. 14-cv-5532, 2016 WL 910496, at *2 (N.D. Ill. Mar. 10, 2016).

5

establish a successful defamation claim" because "[t]he fact that a statement is true, or in this case accurately quoted, is an absolute defense to a defamation action").[3]

Indeed, the theory of Plaintiff's Complaint *concedes* that the depiction of her in the Footage was admittedly true at the time of recording in 2002, yet claims it is "*now-false*" (Compl., Ct. IV, ¶ 28) (emphasis added) because she has made a "miraculous transformation" (*id.* ¶ 22), such that her depiction fails to portray the person "she is today" (*id.* Ct. I, ¶ 32).[4] But nothing in the Footage or Episode states or implies that the footage of Plaintiff reflects what she is like "today." Just the opposite: viewed in the context of the entire Episode, as it must be, it is clear to any viewer that the events depicted are from over 20 years ago, when Kanye West's career was just beginning.

Moreover, Plaintiff's theory—that intervening factual developments can render false historical footage that was true when shot—has been squarely rejected by courts applying Illinois law. For example, in *Haynes v. Alfred A. Knopf*, plaintiff alleged a book defamed him by portraying him as an adulterer, heavy drinker, and absentee father with unstable employment while married to his first wife. 8 F.3d at 1224, 1229, 1230 (7th Cir. 1993). While plaintiff argued that he "turned [his] life completely around" with a steady job, a long-lasting marriage and as a deacon in his church, *id.* at 1231, the Seventh Circuit rejected this argument, and found the defamation claim failed as a matter of law because the book depicted "illustrations of undoubted truths about [plaintiff's] character at the time, illustrations that even if false in detail conveyed an accurate impression." *Id.* at 1229.

---

[3] *See also, e.g., Dauw v. Field Enters., Inc.*, 78 Ill. App. 3d 67, 72 (1979) ("assertions" in unflattering story about plaintiff executive recruiter were "taken…from [plaintiff's] own words" and "plaintiff does not point to a single untruthful statement or inaccurate quotation"; affirming dismissal); *Immanuel v. Cable News Network, Inc.*, 618 F. Supp. 3d 557, 564 (S.D. Tex. 2022) ("Because CNN reported what Dr. Immanuel had said, primarily using her own words and videos, the reports that she had said what she said are not materially false and cannot be the basis of a claim for defamation"); *cf. Masson,* 501 U.S. at 502 ("tape recordings of the interviews demonstrated that petitioner had, in fact, made statements substantially identical to a number of the passages, and those passages are no longer in the case").

[4] Each separate count in Plaintiff's Complaint begins with Paragraph 26, repeating the same Paragraph numbers in every Count. For ease of reference, after Paragraph 25, Defendants refer to the Count number and the Paragraph number.

6

Similarly, in *Hardiman v. Aslam*, 2019 IL App (1st) 173196, a candidate for governor brought a defamation claim alleging that members of a news media organization made false statements when they stated that he had been accused of beating his wife nearly two decades prior. The court rejected plaintiff's argument, holding that even though the conviction was later expunged, nothing altered the "uncontroverted fact" that plaintiff at the time "pleaded guilty to and acknowledged his criminal culpability for an act of battery against his wife." *Id.* at ¶¶ 22-23.

Courts in other jurisdictions have held likewise. *See, e.g., Martin v. Hearst Corp.*, 777 F.3d 546, 551-52 (2d Cir. 2015) (statutory "erasure" of plaintiff's arrest did not "undo historical facts or convert once-true facts into falsehoods"; continuing to maintain reports of arrest on defendant's website was not actionable because they "do not contain falsehoods"). As the Second Circuit put it in *Martin*, no "amount of wishing can undo [the] historical truth" of what appears on the video of Plaintiff; "[t]he Moving Finger has written and moved on." *Id.* at 552.

In short, Plaintiff has no viable defamation claim based on use of the historically accurate Footage in the Documentary.

    **B.    The Allegedly Defamatory Statements Also Are Not Actionable Per Se and Are Subject to an Innocent Construction.**

While truth requires dismissal of both the defamation *per se* and *per quod* claims, Plaintiff's defamation *per se* claims fail for additional reasons as well. To be defamatory *per se*, a statement must "fit[] within one of the recognized categories that will sustain a *per se* action," *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 412-13 (1996). The five categories consist of words that falsely impute that a plaintiff: (1) "committed a crime"; (2) "is infected with a loathsome communicable disease"; (3) "is unable to perform or lacks integrity in performing her or his employment duties"; (4) "lacks ability or otherwise prejudices that person in her or his profession"; and (5) "has engaged in adultery or fornication." *Green v. Rogers*, 234 Ill.2d 478, 491-92 (2009).

7

"[A] defamation *per se* claim must be pled with a heightened level of precision and particularity. This higher standard is premised upon an important policy consideration, namely, that a properly pled defamation *per se* claim relieves the plaintiff of proving actual damages." *Id.* at 495.

The Complaint opines that in the Footage the Plaintiff "appears intoxicated, drunk and/or stoned," speculating from this less than a minute of footage that she is "addicted and/or living in an addiction-fueled lifestyle, inebriated, vagrant and/or possibly homeless" (Compl. ¶ 20), leaping to the further conclusion that it "depicted" her as "suspected of depravities" (*id*. ¶ 21) and "as vulgar, untrustworthy, of ill repute, unemployable, potentially violent, addicted, and living an immoral lifestyle" (*id.* Ct. I, ¶ 28). The Court does not have to accept the Complaint's interpretation of the footage "at face value." *Lott*, 556 F.3d at 569. The Complaint does not identify what *per se* categories apply, and its sweeping "conclusions, inferences, and assumptions" do not state a libel *per se* claim. *Green*, 234 Ill.2d at 498-99 (affirming dismissal).

In any event, even the assumptions the Complaint draws from the Footage do not come within any of the traditional libel *per se* categories as a matter of law:

- The first category requires a "crime" that is "'an indictable one, involving moral turpitude and punishable by death or by imprisonment'"; while the words "'need not meet the technical requirements that are necessary for an indictment,'" they "'must fairly impute the commission of a crime.'" *Moore*, 402 Ill. App. 3d at 69 (quoting *Kirchner v. Greene*, 294 Ill. App. 3d 672, 680 (1998)); *see also, e.g., Knafel v. Chi. Sun-Times, Inc.*, 413 F.3d 637, 641-42 (7th Cir. 2005) (article stating that plaintiff was "the type of woman who looks at a wealthy man and sees dollar signs" and referring to "an 'older' profession" did not impute crime of prostitution).

- To fall under the third and fourth categories, statements must be "related to job performance, as opposed to attacks related to personal integrity and character." *Madison v. Frazier*, 539 F.3d 646, 656 (7th Cir. 2008). "An attack on personal integrity, no matter how it might diminish reputation and damage future business or employment prospects, is not necessarily an attack on professional integrity"; instead, the statement "'must be directly associated with job skills or functions.'" *Jaros v. Village of Downers Grove*, 2020 IL App (2d) 180654, ¶ 61 (citing *Little v. JB Pritzker for Governor*, 2019 WL 1505408, at *8 (N.D. Ill. Apr. 5, 2019)).

8

The Footage does not fairly impute the commission of any crime (and the Complaint identifies none), and nothing in the Footage addresses Plaintiff's job skills or occupation. No one in the Documentary even comments on Plaintiff's conduct, but the Complaint's hypothesis that Plaintiff "*appears* intoxicated, drunk *and/or* stoned" in the Footage, *even if stated directly*, would not be defamatory *per se* under any of those categories.[5] Nor does the second *per se* category (infection with loathsome communicable disease) or fifth category (adultery or fornication) apply here. Simply put, the complained-of Footage is "not within any of the per se categories and therefore [is] not actionable". *Haynes*, 8 F.3d at 1226.

Further, under Illinois' innocent construction rule, "[e]ven if the challenged statement fits within one of" the recognized *per se* categories, "recovery will not be allowed if the statement can reasonably be given an innocent construction." *Anderson,* 172 Ill. 2d at 412. Instead, if, "'considered in context, . . . the [allegedly defamatory] statement may reasonably be innocently interpreted,'" then "'it cannot be actionable *per se*.'" *Pope v. Chronicle Publ. Co.*, 95 F.3d 607, 613 (7th Cir. 1996) (citation omitted). And if, viewed in context, a publication has a reasonable non-defamatory interpretation, dismissal is warranted; no balancing between competing reasonable interpretations is allowed. *Kapotas*, 2015 IL App (1st) 140534, ¶ 58; *Lott*, 556 F.3d at 568 ("Courts need not weigh the relative value of competing constructions; instead, any reasonable, nondefamatory interpretation is the one that sticks"; dismissal affirmed).

Thus, even if the Footage could be construed as imputing any of the libel *per se* categories—and it cannot—that "guilty" construction is plainly not the *only* reasonable one. To

---

[5] While courts have found "that statements made by employers, supervisors, or business associates regarding the effect of drug or alcohol use by the plaintiff *on the job* may constitute *per se* defamation", *Myers v. Phillips Chevrolet, Inc.*, 2004 WL 2403126, *5 (N.D. Ill. Oct. 26, 2004) (emphasis added), that is not this case. *See McKay v. Town and Country Cadillac, Inc.*, 2002 WL 1611578, *9 (N.D. Ill. July 17, 2002) ("I cannot conclude that referring to someone as 'a drunk,' without elaboration, is defamatory *per se* because it imputes an inability to perform a job or prejudices someone in his profession").

9

the contrary, it represents "a quantum leap of speculation and innuendo" and as such cannot be actionable under the Illinois innocent construction rule. *See e.g., Hurst v. Capital Cities Media, Inc.*, 323 Ill. App. 3d 812, 817 (2001) (newspaper report that police interviewed plaintiff did not imply criminal conduct on the part of the plaintiff); *Grisanzio v. Rockford Newsp., Inc.*, 132 Ill. App. 3d 914, 920-21 (1985) ("It would require an entirely unreasonable and strained reading of the article to arrive at [the] conclusion" that plaintiff had committed a crime).

Equally dispositive, the Complaint's basic theory of the case is that the "average viewer" of the Documentary will "perceive Ms. Love's life and lifestyle *today* as abhorrent and loathsome." (Compl., Ct. I, ¶ 29; emphasis added). That interpretation is *un*reasonable—the Footage plainly documents events from the outset of Kanye West's career over 20 years ago. As such, Plaintiff's attempt to found a defamatory *per se* construction fails the elementary tenets of Illinois defamation law, including the innocent construction rule.

### C.  Plaintiff's Purported Libel *Per Quod* Claims Fail for Additional Reasons.

The Complaint's theory of liability fares no better as libel *per quod* for related reasons. While the innocent construction rule applies only to defamation *per se* claims (*Anderson*, 172 Ill. 2d at 412), *per quod* claims (where the defamatory character is not apparent on the face of the statement) are judged under similar interpretive principles, *i.e.,* a "statement should be read as a whole and the words given their natural and obvious meanings" and its meaning "gathered from context." *Allen v. Ali*, 105 Ill. App. 3d 887, 889-90 (1982) (statement that plaintiff spoke "in a very slow partially incoherent voice" not actionable *per quod*). Here, no one in the Documentary opines on Plaintiff's documented conduct, and in context it cannot be read to reflect what Plaintiff is like *today*.

Further still, to state a *per quod* claim, Plaintiff must also plead special damages with particularity. *Am. Intern. Hosp.*, 136 Ill. App. 3d at 1026. "In Illinois courts and federal courts sitting in diversity, special damages must be specifically stated in a *[per] quod* claim." *Lott,* 556 F.3d at

10

570 (citing Fed. R. Civ. P. 9(g)). The Complaint's blanket, unsupported assertions that Plaintiff "had her job endangered, lost work opportunity, inconvenience, lost future wages, and injured her standing in the community" (*e.g.,* Compl. ¶ 31) are precisely the kind of non-specific allegations the courts repeatedly hold insufficient as a matter of law. *See, e.g., Lott,* 556 F.3d at 570 (alleged "'substantial reputational and monetary damages,' without a specific accounting of those damages or an explanation of how the purported defamation caused" pecuniary loss was "not enough"; affirming dismissal); *Anderson*, 172 Ill. 2d at 416-17 (finding general allegations that plaintiff was damaged monetarily by losing gainful employment and wages insufficient).

## II.      Plaintiff's False Light Claims (Counts VII-IX) Fail as a Matter of Law.

For the same reasons Plaintiff's defamation claims fail, her false light claims also fail.[6] In addition to the truth and innocent construction bars discussed above, false light also requires Plaintiff to plead and prove both special damages and actual malice. *Lovgren v. Citizens First Nat'l Bank*, 126 Ill. 2d 411, 421-22 (1989); *Schaffer*, 196 Ill. App. 3d at 736. Plaintiff has no special damages. *See supra* § I.C. Plaintiff also cannot plead or prove actual malice—*i.e.,* that Defendants published known falsehoods, or in fact entertained serious doubts as to the truth of the complained-of Footage. Asserting in conclusory fashion that "Defendants recklessly disregarded the truth of the fact that Ms. Love has made an amazing transformation" and "Defendant's actions were reckless and malicious" (Compl., Ct. I, ¶¶ 32, 34) does not cut it. "[T]he bare conclusory claim of malice, unaccompanied by allegations from which the required subjective element of malice might be inferred, is insufficient to survive a motion to dismiss." *Pippen v. NBC Univ.*

---

[6] *See, e.g., Madison*, 539 F.3d at 659 (when an "unsuccessful defamation *per se* claim is the basis of [a plaintiff's] false-light claim, his false-light invasion of privacy claim fails as well"); *Pope*, 95 F.3d at 616 (false light claims failed because statements were substantially true); *Jefferson v. Winnebago Cty.*, 1995 WL 89064, *14 n. 15 (N.D. Ill. Mar. 2, 1995) ("under Illinois law, the innocent construction rule" applies "equally to false light claims") (citing *Harte v. Chi. Council of Lawyers*, 220 Ill. App. 3d 255, 263 (1991), and *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 734 n. 2 (1990)).

11

*Media,* 2012 WL 12903167, *2 (N.D. Ill. Aug. 2, 2012), *aff'd*, 734 F.3d 610 (7th Cir. 2013) (citing *Iqbal,* 556 U.S. at 686-87).

### III. Plaintiff's Right of Publicity Claims (Counts X-XII) Fail as a Matter of Law.

Plaintiff has no viable claims under the Illinois Right of Publicity Act, 765 ILCS 1075 ("IRPA").[7] IRPA expressly exempts from liability the "use of an individual's identity in an attempt to portray, describe, or impersonate that individual in . . . television, or other audio, visual, or audio-visual work, provided that the performance . . . does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services". 765 ILCS 1075/35(b)(1). It also expressly exempts the "use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign". 765 ILCS 1075/35(b)(2). "Courts construe the IRPA's non-commercial use exemption to avoid First Amendment infirmity." *Zglobicki v. Travel Channel, LLC*, No. 11-cv-6346, 2012 WL 725570, at *2 (N.D. Ill. Feb. 2, 2012) (citing *Best v. Berard*, 776 F. Supp. 2d 752, 758-59 (N.D. Ill. 2011)).

Plaintiff was depicted in the Documentary, which is an "audio-visual work" and not a commercial advertisement. As such, it falls within exemption 35(b)(1). This exemption "clearly and unambiguously exempts artistic works, including television productions" thus "avoiding the serious First Amendment problems" that would otherwise arise. *Collier v. Murphy*, 2003 WL 1606637, at *2-3 (N.D. Ill. Mar. 26, 2003) (dismissing IRPA claim based on depiction in animated comedy show, rejecting as "nonsense" argument that show itself was "a commercial product").

---

[7] With the enactment of IRPA, "the common-law tort of appropriation of one's likeness ceased to exist. The Right of Publicity Act, effective January 1, 1999, completely replaced the common-law tort of appropriation of likeness. . ." *Blair v. Nevada Landing P'ship*, 369 Ill. App. 3d 318, 322–23 (2006).

12

The Documentary's use of Plaintiff's likeness also falls squarely within the public affairs exemption in 35(b)(2) because the Footage in the Documentary depicts her meeting and interacting with Kanye "Ye" West, who undoubtedly is "'a subject of general interest and of value and concern to the public.'" *Zglobicki*, 2012 WL 725570, at *2 (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)) (plaintiff's depiction in the television show Extreme Fast Food as a patron of a Chicago restaurant not actionable because Extreme Fast Food "constitutes non-commercial speech that focuses on public affairs"); *Best v. Berard*, 776 F. Supp. 2d at 758-59 (public-affairs exemption applied to footage of plaintiff's arrest used in the entertainment program Female Forces because arrests are a matter of public concern even though it was an entertainment show).[8]

Finally, as Illinois courts have explained, "'[e]xposure of the self to others in varying degrees is a concomitant of life in a civilized community. The risk of this exposure is an essential incident of life in a society which places a primary value on freedom of speech and of press.'" *Zglobicki*, 2012 WL 725570, at *2 (citation omitted). This is particularly true here where Plaintiff had a chance encounter and interaction in a public restaurant with a future superstar. Indeed, the Documentary depicts scores of people from all walks of life who Mr. West encounters during his travels over the span of two decades on his documented journey. Plaintiff simply does not have a wrongful publicity claim for her inclusion in the Documentary.

---

[8] In a prior decision in the *Best* case, Judge Kennelly concluded that the video of plaintiff's arrest was not technically "'an attempt to portray, describe, or impersonate' her in a work of art" within the meaning of section 35(b)(1), *see Best v. Malec*, No. 09-cv-7749, 2010 WL 2364412, at *3 (N.D. Ill. June 11, 2010), but found instead that dismissal was required under section 35(b)(2) and that any other result would offend the First Amendment. *Best v. Berard*, 776 F. Supp. 2d at 758-59. Defendants respectfully submit that *both* exemptions apply: the Documentary is no less a work of art that "'portray[s]'" Plaintiff because it uses real footage. *See Cummings v. Soul Train Holdings LLC*, 67 F. Supp. 3d 599, 602-03 (S.D.N.Y. 2014) (citing 765 ILCS 1075/35(b)(1)) (television program that used actual video footage of musician "'portray[ed]'" his performance and was "clearly within" exemption 35(b)(1); dismissing IRPA claim). "Under the First Amendment, a right of publicity cause of action may not be maintained against 'expressive works, whether factual or fictional.'" *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 437-38 (S.D.N.Y. 2019) (quoting *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002)) (documentary "qualifies both as an expressive work and as a report on a matter of public interest"; dismissing right of publicity claim).

13

**IV.     Plaintiff's Other Tag-Along Claims Fail as a Matter of Law.**

Plaintiff's remaining claims are premised solely on the same allegedly defamatory Footage and the same doctrines that doom her defamation claims apply, regardless of how Plaintiff characterizes her cause of action. Permitting Plaintiff to found her other claims on the same facts would sidestep the rules of defamation law; and on this ground alone they should be dismissed, as courts routinely do. *See e.g., John E. Reid and Assocs. v. Netflix, Inc.*, 2020 WL 1330657, *11 (N.D. Ill. Mar. 23, 2020) (dismissing unjust enrichment and other claims with defamation claim).[9]

***Intentional Infliction of Emotional Distress (Counts XIII-XV).*** Plaintiff's IIED claims fail as a matter of law for further reasons, namely, because the depiction of her was not extreme or outrageous as required by law. "Illinois case law makes clear that the standard is high; the tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or trivialities." *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶¶ 64, 69, 70, 72, 74 (dismissing IIED claim against ESPN and its reporter for statements made regarding disciplinary actions against kids because it was not extreme or outrageous even though plaintiff claimed that "ESPN/Smith held disproportionate power as media and abused their authority to the plaintiffs' emotional detriment"). For example, in *Webb v. CBS Broad., Inc*., 2011 WL 4062488, at *5 (N.D. Ill. Sept. 13, 2011), the court held that the broadcast of a videotape of plaintiff in his home pool was "unwelcome," but it was not extreme or outrageous. Similarly, while Plaintiff may want to distance herself from that period of her life, the depiction of her is not extreme or outrageous.

***Civil Conspiracy (Count XVI).*** Civil conspiracy "is not an independent tort: the conspiracy claim fails if the independent cause of action underlying the conspiracy allegation

---

[9]  *See, e.g., Brown & Williamson Tobacco Corp. v. Jacobson,* 713 F.2d 262, 273-74 (7th Cir. 1983) (allowing ancillary claims based on same publication would "enabl[e] the plaintiff to avoid the specific limitations with which the law of defamation—presumably to some purpose—is hedged about"); *Flip Side, Inc. v. Chi. Tribune Co.,* 206 Ill. App. 3d 641, 656 (1990) (tort claims based on same publication as defamation count would not be "treat[ed] . . . separately").

fails." *Coghlan*, 2013 IL App (1st) 120891, ¶ 59. Because Plaintiff has no viable underlying tort for the reasons discussed above, her civil conspiracy claim also fails. *See id.*; *Bd. of Forensic Document Examiners, Inc. v. Am. Bar Ass'n*, 287 F. Supp. 3d 726, 739 (N.D. Ill. 2018), *aff'd*, 922 F.3d 827 (7th Cir. 2019) (dismissing civil conspiracy claim because plaintiff had not asserted a viable cause of action as the underlying tort).

***Quantum Meruit (Counts XVII-XIX) and Unjust Enrichment (Counts XX-XXII).*** Both quantum meruit and unjust enrichment are premised on the retention of a benefit from another if such retention "'violates the fundamental principles of justice, equity, and good conscience.'" *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (internal quotations omitted); *Ahn v. Midway Mfg. Co.*, 965 F. Supp. 1134, 1140 (N.D. Ill. 1997). Here, no benefit has been retained that would be unjust—as discussed above, under Illinois law, Defendants were fully entitled to use Plaintiff's name and likeness in a documentary without her permission or compensation. Because unjust enrichment "is not a separate cause of action", it too must be dismissed. *Matthews v. Polar Corp.*, 2023 WL 2599871, at *10 (N.D. Ill. Mar. 22, 2023) (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739-40 (7th Cir. 2019)); *see also Cleary*, 656 F.3d at 517 (noting that "unjust enrichment will stand or fall with the related claim."); *Collier v. Murphy*, 2003 WL 1606637, at *4 (dismissing unjust enrichment claim where right of publicity and other "substantive counts" had been dismissed). The quantum meruit and unjust enrichment claims fail as a matter of law.

## CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint with prejudice.

15

Dated: May 15, 2023

Respectfully submitted,

*/s/ Natalie J. Spears*

DENTONS US LLP
Natalie J. Spears
Jacqueline A. Giannini
Victoria J. Noble
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
312-876-8000
natalie.spears@dentons.com
jacqui.giannini@dentons.com
victoria.noble@dentons.com

*Attorneys for Defendants Clarence Ivy Simmons, Jr. a/k/a Coodie, Chike Antoine Ozah, and Netflix, Inc.*

## CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** was filed with the Clerk of the Court on May 15, 2023 by using the CM/ECF system, which will send a notice of electronic filing to all registered users. I further certify that I caused a copy of the foregoing to be served upon the following via U.S. mail and electronic mail on this 15th day of May 2023:

MCKENNA STORER
Kristin D. Tauras
Andrew W. Bratzel
Joshua S. Worell
33. North LaSalle Street, Suite 1400
Chicago, IL 60602
(312) 558-3900
ktauras@mckenna-law.com
abratzel@mckenna-law.com
jworell@mckenna-law.com
service@mckenna-law.com

                                                  */s/ Natalie J. Spears*
                                                  Natalie J. Spears