UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA LOVE<br><br>        Plaintiff,<br><br>        v.<br><br>CLARENCE IVY SIMMONS, JR. aka COODIE, CHIKE ANTOINE OZAH, and NETFLIX, INC.,<br><br>        Defendants. | Case No. 1:23-cv-02392<br><br>Hon. Steven C. Seeger |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Natalie J. Spears
Jacqueline A. Giannini
Victoria J. Noble
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
Tel: (312) 876-8000
Fax: (312) 876-7934
*natalie.spears@dentons.com*
*jacqui.giannini@dentons.com*
*victoria.noble@dentons.com*

Controlling Illinois law, informed by the protections of the First Amendment, forecloses Plaintiffs' tort lawsuit against the filmmakers and producers of the docuseries *Jeen-yuhs: A Kanye Trilogy* (the "Documentary"). Plaintiff's brief in opposition to dismissal ("Opp.") makes no attempt to address, let alone distinguish, that controlling law. Her conclusory assertions that merely echo the Complaint's allegations also are no answer.

All of Plaintiff's claims complain of less than one minute of videotape footage (the "Footage") in the Documentary depicting her encounter with Kanye West in a public restaurant in Chicago twenty years ago, which she admits is a true depiction of her then. At bottom, regardless of the legal theory, Plaintiff cannot recover tort damages that punish documentarians' use of truthful historical footage. Her claims simply fail for that fundamental reason, as well as several others. Defendants respectfully submit that dismissal is in order.

**I.  Plaintiff's Opposition Does Not Challenge The Fundamental Principles Requiring Dismissal of Her Defamation Claims (Counts I - VI) as a Matter of Law.**

Plaintiff concedes that falsity is an element of her defamation claims on which she has the burden (Opp. at 3), both under Illinois law and the First Amendment (*see* Open. Br. at 4), but incorrectly asserts that she can meet that burden by showing that "a statement is technically false in some way". (Opp. at 3.) The governing standard—substantial truth or material falsity, which asks if the "gist" or "sting" of the statements is true—rejects reliance on technical hairsplitting. *See, e.g., Wesbrook v. Ulrich*, 840 F.3d 388, 395 (7th Cir. 2016); Open. Br. at 4-5; *Andrews v. At World Properties LLC*, 2023 IL App (1st) 1220950, ¶ 24 (affirming dismissal where plaintiff's own recorded conduct and words in Facebook posts established substantial truth of employer's statement).

Here, the Footage that Plaintiff complains of is not just substantially true, but *literally* true. Plaintiff concedes, as she must, that the depiction of her in the Footage was true at the time of recording in 2002. (*See, e.g.,* Compl., Ct. IV, ¶ 28.) "A party's accurate quoting of another's

statement"—and *a fortiori* a *recording* of such—"cannot defame the speaker's reputation since the speaker is himself responsible for whatever harm the words might cause." *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993). Plaintiff does not address the Seventh Circuit's holding in *Thomas*, or any of the other Illinois and federal cases dismissing defamation claims on substantial truth grounds where, as here, the truth of the challenged statement (*i.e.*, the Footage) cannot be disputed, and indeed, is established by the Footage itself and the Complaint's allegations.[1] (Open. Br. at 5 and n.2; *see also Andrews*, *supra*.) Nor does Plaintiff dispute that nothing in the Documentary comments on or characterizes Plaintiff's conduct; the Footage speaks for itself.

Plaintiff's main argument in her Opposition (which she simply repeats from her Complaint) is that the Footage "gives the impression of who Ms. Love was then *and now*" (Opp. at 5 (emphasis added)). But that conclusion simply does not square with how the Footage appears in the context of the Documentary—as part of scenes depicting Mr. West's 2002 visit to the neighborhood where he grew up (*see* Ex. 1, Ep. 1, 1:12:25– 1:23:25), and in the 2003 music video that "launched his career" (Opp. at 5; *see* Ex. 1, Ep. 2, 1:04:43 - 1:04:52). Nothing in the Documentary "leaves the viewer with the impression Ms. Love is still living in the streets" to this day, "homeless and unwell." (Opp. at 5.) Viewed in context, as it must be, it is clear to any viewer that the events depicted are from over 20 years ago, when Kanye West's career was just beginning.

The Court need not accept Plaintiff's untenable characterization of the Documentary "at face value," *Lott v. Levitt*, 556 F.3d 564, 569 (7th Cir. 2009). The fact that Plaintiff subsequently turned her life around does not retroactively make the Footage "false." Once again, Plaintiff

---

[1] Plaintiff does not dispute that the Documentary is referenced in and central to the Complaint. (*See* Open Br. at 2 n. 1.) As such the actual Documentary and Footage control over contradictory complaint allegations. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (court may consider "any facts set forth in the complaint that undermine the plaintiff's claim" including "documents referenced in the pleading if they are central to the claim").

ignores the authority expressly rejecting the notion that intervening factual developments can render false "illustrations of undoubted truths about [plaintiff's] character at the time." *Haynes v. Alfred A. Knopf*, 8 F.3d at 1222, 1229 (7th Cir. 1993); *see* Open. Br. at 6-7. No "amount of wishing can undo [the] historical truth" of what appears in the Footage. *Martin v. Hearst Corp.*, 777 F.3d 546, 552 (2d Cir. 2015).

In addition, Plaintiff's theory is scuttled by the Illinois innocent construction rule, about which Plaintiff says nothing. If, in context, a publication has a reasonable non-defamatory interpretation, the rule requires dismissal: there is no balancing between competing reasonable interpretations. *Kapotas v. Better Gov't Ass'n*, 2015 IL App (1st) 140534, ¶ 58; *Andrews*, 2023 IL App (1st) 1220950, ¶ 26; *Lott*, 556 F.3d at 568. Here, Plaintiff's guilty construction—that the Documentary purports to convey what Plaintiff's life is like *today* (Compl., Ct. I, ¶ 29; Opp. at 5)— is not the *only* reasonable one. Far from it. "It would require an entirely unreasonable and strained reading of the [Documentary] to arrive at [Plaintiff's] conclusion." *Grisanzio v. Rockford Newspapers, Inc.,* 132 Ill. App. 3d 914, 9221 (1985) (affirming dismissal under rule); *Andrews*, 2023 IL App (1st) 1220950, ¶¶ 27-28 (employer's statement terminating plaintiff and condemning "violence, destruction or illegal activities" reasonably construed to refer to plaintiff's social media posts celebrating the storming of the Capitol, rather than accusing her of "criminal or destructive acts herself"). The rule's unchallenged application here requires dismissal of the defamation *per se* claim without more.[2]

Further still, the claims for defamation *per se* and *per quod* fail as a matter of law for additional reasons set forth in Defendants' Motion, which Plaintiff also fails to address.

---

[2] While innocent construction applies only to defamation *per se* claims, Plaintiff's theory fails even when judged under the similar interpretive principles applicable to defamation *per quod*, *i.e.,* a statement's meaning must be "gathered from context." (Open. Br. at 10.) Here, the Documentary's context undermines the claimed defamation that the Footage is reflecting on what Plaintiff's life is like today.

3

To be defamatory *per se*, a statement must fit within one of the recognized *per se* categories. *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 412-13 (1996). The Complaint does not identify what *per se* categories apply. Plaintiff now asserts that she is relying on "the third category" (inability to perform or lack of integrity in performing "employment duties"), Opp. at 3, but ignores the Illinois authority (cited by Defendants) holding that in order to fall under that category a statement must be specifically "related to job performance," as opposed to general "attacks related to personal integrity and character." *Madison v. Frazier*, 539 F.3d 646, 656 (7th Cir. 2008); *Jaros v. Village of Downers Grove*, 2020 IL App (2d) 180654, ¶ 61; *see* Open. Br. at 8-9.[3] Plaintiff's conclusory assertions about how the less-than-one-minute of Footage allegedly damaged her reputation (Opp. at 3-4) are no answer to that authority or the fact that, on its face, the Footage says nothing about Plaintiff's job performance. Plaintiff does not dispute that none of the other *per se* categories apply.

Plaintiff concedes that special damages are required and must be pleaded with particularity to sustain a claim of defamation *per quod* (Opp. at 4)—but then does not address the cases holding that non-specific allegations of harm like those in her Complaint are insufficient as a matter of law. (*See* Open Br. at 10-11.) For this further reason the *per quod* claims also should be dismissed.

## II. Plaintiff's False Light Claims (Counts VII-IX) Fail for the Same Unchallenged Reasons as the Defamation Claims and for Lack of Actual Malice.

The same truth and innocent construction principles also bar Plaintiff's false light claim, as does her failure to adequately plead special damages. (*See* Open. Br. at 11 and n. 6.) In addition, false light claims require the plaintiff to plead and prove actual malice—that Defendants published known falsehoods, or in fact entertained serious doubts as to the truth of the complained-of Footage.

---

[3] Thus, the Complaint's hypothesis that Plaintiff "appears intoxicated, drunk and/or stoned" in the Footage, even if stated directly, would not be defamatory *per se* as it is not specifically connected to Plaintiff's employment or job performance. (*See* Open. Br. at 9 n.5.)

4

*Lovgren v. Citizens First Nat'l Bank of Princeton*, 126 Ill. 2d 411, 421-22 (1989). Plaintiff's opposition simply repeats the Complaint's conclusory assertion that "Defendants recklessly disregarded the truth" because they did not "attempt to find out the truth about Ms. Love and her current transformation." (Opp. at 6.) That bare assertion "is insufficient to survive a motion to dismiss." *Pippen v. NBC Universal Media, LLC,* 2012 WL 12903167, at *2 (N.D. Ill. Aug. 2, 2012), *aff'd*, 734 F.3d 610 (7th Cir. 2013).

### III. Plaintiff's Right of Publicity Claims (Counts X-XII) Are Statutorily Exempt and Her Arguments Would Put IRPA Athwart the First Amendment.

Plaintiff's opposition acknowledges that the Illinois Right of Publicity Act, 765 ILCS 1075 ("IRPA"), which codified the common law right of publicity, is limited to uses of an individual's identity "for commercial purposes." (Opp. at 6-7, citing 765 ILCS 1075/10.) The Documentary here is definitively *not* such a use, and falls squarely within IRPA's express exemptions, which exist and are construed to avoid serious conflict with the First Amendment. *See Zglobicki v. Travel Channel, LLC*, 2012 WL 725570, at *2 (N.D. Ill. Feb. 2, 2012) ("Courts construe the IRPA's non-commercial use exemption to avoid First Amendment infirmity"); *Collier v. Murphy*, 2003 WL 1606637, at *2-3 (N.D. Ill. Mar. 26, 2003) (same). Plaintiff's attempts to argue otherwise fail for several reasons.

To begin, Plaintiff's contention that the Documentary "was produced and broadcast for *commercial purposes*" because it was "created as a product to be advertised on the Netflix platform for profit," and the filmmakers were paid (Opp. at 7, emphasis added) is flat wrong and contrary to long-standing constitutional precepts. Films are a "significant medium for the communication of ideas" protected by the First Amendment; no less than "books, newspapers, and magazines," the fact that films also "are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment." *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952); *see also N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964)

5

(First Amendment applicable to for-profit newspaper; "[t]hat the Times was paid for publishing the advertisement is as immaterial in this connection as is the fact that newspapers and books are sold"). A documentary film is an expressive work and "[u]nder the First Amendment, a right of publicity cause of action may not be maintained against 'expressive works, whether factual or fictional.'" *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 437-38 (S.D.N.Y. 2019) (citations omitted) (dismissing right of publicity action based on use of footage in documentary).

Thus, Plaintiff's assertion that IRPA exemption 35(b)(1) does not apply because the Documentary is a "commercial advertisement" and not an exempt "audio-visual work" (Opp. at 7, quoting 765 ILCS 1075/35(b)(1)) and that no "First Amendment or artistic or creative expression was at play with respect to Ms. Love" (Opp. at 9) is contrary to this settled law and does not pass the straight face test. *See Collier*, 2003 WL 1606637, at *2-3 (rejecting as "nonsense" argument that animated comedy show was "a commercial product"); *Christianson v. Henry Holt & Co., LLC*, 2007 WL 2680822, at **2-3 (C.D. Ill. June 29, 2007) ("The IRPA recognizes the serious First Amendment implications inherent in regulating artistic and creative expression"; non-fiction book was "non-commercial speech that focuses on public affairs"). Unable to legitimately dispute that the Documentary is classic, non-commercial speech, Plaintiff attempts to dodge the exemption by saying that since the Footage is admittedly truthful, "Defendants cannot now argue that it was an attempt to "portray" her within the meaning of section 35(b)(1); "It was her." (Opp. at 8.) But as Defendants noted in their Motion, the Documentary is no less a work of art that "portrays" Plaintiff because it uses real footage. (Open. Br. at 13 n.8, citing *Cummings v. Soul Train Holdings LLC*, 67 F. Supp. 3d 599, 602-03 (S.D.N.Y. 2014) (dismissing IRPA claim).)

The Documentary's use of Plaintiff's likeness also falls squarely within exemption 35(b)(2), exempting "use of an individual's identity for non-commercial purposes, including *any* news, *public affairs*, or sports broadcast or account, or any political campaign". 765 ILCS 1075/35(b)(2) (emphasis

6

added).[4]  Again, the Documentary is an expressive work, not commercial speech, and Plaintiff does not dispute that the subject of the Documentary, Kanye West, is "a subject of general interest" to the public within the meaning of section 35(b)(2)'s "public affairs" exemption. *Zglobicki*, 2012 WL 725570, at *2; *see also Buzinski v. DoAll Co.*, 31 Ill. App. 2d 191, 195 (1st Dist. 1961) ("public interest" limitation on common law appropriation tort includes "any informational material of legitimate public interest," including "travel stories, tales of historic personages and events, the reproduction of past news and surveys of social conditions"); *Bogie*, 705 F.3d at 914-15 (documentary about Joan Rivers "falls safely within the bounds of the newsworthiness exception" to Wisconsin appropriation statute).

Plaintiff attempts to avoid this exemption's clear application by arguing that she is not a "person of interest" outside her interaction with Mr. West and appearance in the Footage and 2003 music video. (Opp. at 9.)  Of course, "[p]eople who do not desire the limelight and do not deliberately choose a way of life or course of conduct calculated to thrust them into it nevertheless have no legal right to extinguish it if the experiences that have befallen them are newsworthy, even if they would prefer that those experiences be kept private." *Haynes*, 8 F.3d at 1232.  Addressing the public affairs limitation under common law, *Buzinski* held that even where a plaintiff's likeness is wholly incidental to a publication, "[t]he only question is whether the picture complained of has *so tenuous a connection with the article that it can be said to have no legitimate relationship to it*." 31 Ill. App. 2d at 196 (emphasis added) (privilege to report on matters of public interest was not "defeated by the inclusion of plaintiff's likeness"; affirming dismissal).[5]

---

[4]  Plaintiff argues that 35(b)(2) does not apply because "[t]his Netflix series cannot be seriously argued to be news, sports, or a political campaign" (Opp. at 8)—tellingly omitting that "public affairs" is also among the examples of non-commercial uses "includ[ed]" in the exemption.  Documentaries also are a form of news.

[5]  Common law cases like *Buzinski* inform interpretation of the statutory exemptions, as "IRPA's aim was to codify the common law right of publicity tort (or appropriation of likeness tort) and generally to 'supplement' the common law rather than substantially alter it." *Martin v. Wendy's Int'l, Inc.*, 2017 WL 1545684, at *4 (N.D. Ill. Apr. 28, 2017).

7

Here, Plaintiff has much more than a "tenuous" connection to the Documentary. The Documentary explores how Kanye West came from the neighborhoods of Chicago's South Side to become "Ye," global celebrity and social and political lightning rod. *Plaintiff was part of that origin story*: after her chance encounter with Mr. West, she was depicted in one of the early music videos in 2003, *Through the Wire*, that "launched [West's] career" and formed his image. (Opp. at 5.) As Plaintiff herself alleges, "The depiction of Ms. Love's image and likeness in the *Through the Wire* music video is used to create a narrative of Mr. West as a caring person, in touch with his neighborhood, and authentic." (Compl. ¶ 13; Opp. at 2.)

Plaintiff tries to distinguish "the incidental portrayal of the plaintiff as a customer at [a] restaurant" in *Zglobicki* from the "sequence that focused on Ms. Love" (Opp. at 9), but that only fortifies the basis for exemption here: if using the image of someone who just happened to be eating at the Wiener's Circle is subject to the public affairs exemption, then certainly including the Footage of Plaintiff—directly germane to the Documentary's exploration of celebrity image making that Plaintiff describes—is protected speech on public affairs expressly exempt from IRPA.

Finally, Plaintiff's argument that this case is like *Christianson v. Henry Holt* (Opp. at 8) is wide of the mark. *Christianson* held the IRPA exemptions did not apply where defendant applied plaintiff's photo on a book cover even though the book *never* mentioned her. As the court noted, however, "if Plaintiff's identity was incorporated into that non-commercial speech, *then her claim would fall within this exception*. However, Plaintiff *is not mentioned* in the book." 2007 WL 2680822, at *3 (emphasis added). Here of course, Plaintiff's identity *was* "mentioned" and incorporated in the Documentary itself, and contrary to what Plaintiff suggests, the Documentary did not need to be "about her" (Opp. at 8) in order to be exempt under IRPA. Certainly *Christianson* did not so hold. Such a narrow reading of the exemptions, excluding from their scope any individuals who are not the main protagonists of an expressive work, would be contrary to Illinois law (*see, e.g.,*

8

*Buzinski, supra*), not to mention unworkable and constitutionally problematic, which courts strive to avoid in interpreting IPRA. *Zglobicki*, 2012 WL 725570, at *2.[6]

**IV.     Plaintiff's Other Claims Premised Solely on the Same Allegedly Defamatory Footage Cannot Stand.**

Plaintiff does not respond to the cases recognizing that the constitutionally-informed limitations of defamation law cannot be end-run by putting another label on the same allegations. (Open. Br. at 14 and n.9.)  On this ground alone her tag-along claims should be dismissed.

Plaintiff's defense of her intentional infliction of emotional distress claims (Counts XIII-XV) is long on fiery rhetoric but does not respond to the cases holding that this tort's high standard of *extreme* outrageousness is not met by First Amendment-protected publications like the Documentary, even accounting for the media's alleged "disproportionate power." *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶¶ 64, 69, 70, 72, 74 (dismissing IIED claim against ESPN and reporter).

Plaintiff recites the elements of civil conspiracy (Count XVI), but does not dispute that conspiracy is not an independent tort, and such a claim fails where, as here, Plaintiff has no viable underlying tort. *See Bd. of Forensic Document Examiners, Inc. v. Am. Bar Ass'n*, 287 F. Supp. 3d 726, 739 (N.D. Ill. 2018), *aff'd*, 922 F.3d 827 (7th Cir. 2019) (dismissing civil conspiracy claim because plaintiff had not asserted a viable cause of action as the underlying tort).

There was no unjust retention of any benefit that would support Plaintiff's claims for quantum meruit (Counts XVII-XIX) and unjust enrichment (Counts XX-XXII); as shown above, Defendants were entitled as a matter of law to use Plaintiff's name and likeness in the

---

[6] For *Christianson's* holding to be relevant, Plaintiff's image would have to be used, for example, on the cover of a DVD of the Documentary, not in the Documentary itself.  Even then Plaintiff would have no claim under *Christianson*, which acknowledged that the First Amendment protects such uses where the cover photo has some connection to the content, as it does here. *Id.* at *3-4.

Documentary. Plaintiff does not dispute that unjust enrichment is not a separate cause of action and is subject to dismissal for this additional reason.

## CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated: June 27, 2023

Respectfully submitted,

*/s/ Natalie J. Spears*

DENTONS US LLP
Natalie J. Spears
Jacqueline A. Giannini
Victoria J. Noble
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
312-876-8000
natalie.spears@dentons.com
jacqui.giannini@dentons.com
victoria.noble@dentons.com

*Attorneys for Defendants Clarence Ivy Simmons, Jr. a/k/a Coodie, Chike Antoine Ozah, and Netflix, Inc.*